May it please the Court, Your Honors. My name is Mike Duncan. I'm here today to argue on behalf of my client, Michael Kenneth Young, in regard to the denial of a motion to sever his case and grant him a separate trial on several counts of a superseding indictment and also to address the denial of a motion to suppress certain evidence that was seized in violation of the Fourth Amendment in my hometown of Columbia, South Carolina. Your Honors, the issue as to the joinder, Mr. Young was charged in arising out of four separate arrests and he, a motion was made for a separate trial in regard to those arrests and the court, district court, denied that stating that joinder, broad joinder and such, the joinder was such that it did not violate the Constitution, that Mr. Young was not entitled to a separate trial. She entertained the government's argument invoking a common scheme or plan which gets to the government's point in this case and I was not involved, I was not representing Mr. Young at the time of the hearing of the motion to suppress or the motion to sever. But at trial, it was clear and it was clear throughout the course of my representation of Mr. Young that the government's theme was that Mr. Young was a drug dealer, that Mr. Young, in regard to the case, circled around that, focused on that. I would submit that the government's position was in error in that taking that position, Mr. Young clearly, Your Honors, in the sealed version of the joint appendix including Mr. Young's brief sentence report, Mr. Young had multiple convictions, I believe six drug convictions over a seven year period during his late teens and early twenties. As a 30-year-old man, which he was at the time of the superseding indictment, actually 32, Mr. Young had gotten his GED while in 2012 was attending a local tech school, ITT Tech, to get a degree in electrical engineering. He had changed his behavior, but the government striked that. Local law enforcement had made various stops of Mr. Young. There were stops by an agency, the Richland County Sheriff's Department, which is the local county in Columbia, Richland County Sheriff's Department, had stopped Mr. Young on one occasion. The City of Columbia had stopped Mr. Young about eight months later, and Richland County Sheriff's Department, about three months later, had another arrest, unrelated, none of the same officers, none of the same individuals, but that's what had happened. More significantly, the government had tried to hamstring, tried to bring in count one of the indictment, an arrest from a neighboring jurisdiction, West Columbia Police Department, in which Mr. Young was alleged to have been involved, to have been involved, not to have been a hand-to-hand dealer, but to have been involved in a $20 crack rock sale in July of 2012. So about two years prior to any of the other cases, and again, in that instance, no one involved in that transaction had anything to do with any of the other transactions. Just so I understand, how did you want these counts tried? You agreed that two, three, and four could be tried together, right? That's correct. Two, three, and... together? Your Honor, I'm just, I'm just wondering, I literally, I don't mean anything by this, I'm just trying to understand how, what your position was. I understand. The motion, at the time the severance motion was filed, there was not a count six. Right, as you look at it now, can five and six be tried together or no? Your Honor, I... Same claim, but different circumstances. I would, I would seek a separate trial for those, just to avoid the confusion, and again, it's two separate law enforcement agencies. The City of Columbia Police Department's involved in count five, and Richland County Sheriff's Department's involved in count six, and count six is really, is not a traffic stop. Okay. So tell me, what is your theory of prejudice from sort of misjoining these drug counts with the felon in possession counts? Because I think normally, right, we worry that you add in the felon in possession counts, and that's basically telling the jury on the drug counts, this guy's a felon. But here, right, they acquitted on the Well, the concern is that you had, we had a mishmash of local law enforcement agencies, and so you have the DEA came in and puts a federal spin on the case. I don't mean to use that term, but it becomes federal, but it was four different arrests by local law enforcement. That's what you had. But having the drug charge, having this kind of mega theme of Mr. Young is a drug dealer, allowed the government to bring in their FBI agent, expert testimony, probably the best FBI witness they could find. He had been the director of the local office. His name was Michael Stansberry. He gets to come in and testify about, here's how drug dealers do. They cook crack, they use guns. This is the way it is. Now, mind you, the FBI had nothing to do with this case, no investigation, and Agent Stansberry on cross-examination says, well, I don't know anything about facts, it is. I'm sorry, so you're saying that prejudice ran the other way, sort of that the evidence about the drug dealing could have led the jury to convict on felony possession? That's right. Even though they acquitted, though, on the drug charges? That seems, again, this is such an unusual case for prejudice, given that they acquitted on all of the drug charges. I understand your question, and... So it seems like they didn't find that testimony all that persuasive. I think it could have been a situation where a compromise verdict by the jury... Okay, and I thought of this, right, just sort of like a free-floating sense, like, look, you've got six charges, he must have done something. But the judge did give an instruction, right, that ought to have headed that off, where he says, listen, you can't do that. It's charge by charge, you have to take them all separately, you can't put them together. We have said, in lots of cases, that that kind of a charge goes a very long way toward mitigating prejudice in these cases. I understand. I can simply say that in the moment, in the trial, the jury was out, they at least had a moment of being deadlocked, and I don't know what they were deadlocked on, obviously, but shortly thereafter, they came back with a verdict of guilty on felon and possession counts and acquittal on all the drug-related charges, including, as Your Honor pointed out, counts 2, 3, and 4 arise out of the same incident. And they acquitted Mr. Young on counts 2 and 3 and found him guilty on count 4. Well, I understand that you are not, you brought up count 5 and 6, and I want to make sure I understand your response to Judge Harris's question on that. Are you saying that issue was not presented to the trial court below, so therefore it's not before us now? Your Honor, the issue of separate trials was presented, but count 6 was not included in the indictment at the time. So you never brought it up even after it's on there? Your Honor, I did not, and again, not to make any excuse of it, but by the time I came into the case, it was about a year post the severance hearing. And on the harmlessness in response to Judge Harris's question, I'm trying to understand, you pointed out a few things, but the elements there focus on the question of whether the record does seem to indicate that element pretty clearly. Do you think otherwise, and then the other elements seem to fall in place with the harmlessness aspect of this evidence? Well, Your Honor, I do take issue with the government's argument of harmlessness and overwhelming evidence of guilt. Again, as Judge Harris pointed out, you have lumped in a lot of charges, so the guy must be guilty of something. But I think if you take them individually and watching in preparation for being here today, re-watching the video stops, in particular, stop number one in April of 2014, you have an officer, Deputy, Richland County Sheriff's Deputy Puckett, who makes the stop, goes to the car in about two minutes or so, has returned to her vehicle, gets on the radio, and says, well, I've run their names, they're both clear, although I showed that Michael Young was incarcerated. That's obviously not true because he's sitting here. What do you want me to do? And I think fundamentally that runs afoul of the Rodriguez case of extending the traffic stop to try to figure out, you know, we're bound to find something if we can look around, so give us a chance. And again, that's one example of the evidence not being as strong as the government would portray. The DNA evidence, and I've passed my time, if I could respond. There's DNA that I'm sure the government has mentioned quite a few times in their brief, and I'm sure we'll talk about today, but the DNA evidence as to Mr. Young, as the analyst, Mr. Barron, of the Richland County Sheriff's Department pointed out, you know, all that establishes is that at some point in time, Mr. Young had touched something, had been in possession of something. You mean that recovered handgun? Sir? That recovered handgun. Of a handgun. Of a handgun. And he has explained that, but he's charged with an instance of being in possession, not a general. Mr. Young had a handgun sometime along the way. That wasn't a gun that was found on the seat of the car? Sir? Was that the gun found on the seat of the car? No, sir. It was found under the passenger seat of a vehicle where the other individual walked away, left, fled the scene in the hotel parking lot in January of 2015. And the officer watched the second guy leave, the passenger leave, and said, well, I was the only one there, and I was talking to Mr. Young. And was Mr. Young within the proximity of the gun? Mr. Young was the driver of the vehicle. The two firearms were found under the passenger seat of the... DNA was found on... One. One of the guns. One of the guns. And you think that's not enough? I think that is not overwhelming evidence such as to render a harmlessness error... I got you. ...sufficient. And I'm out of time. All right. Thank you. Thank you, Mr. Duncan. Mr. Garner? Thank you. Good morning, and may it please the Court. Ben Garner on behalf of the United States. I'd like to begin where we left off, and that's the issue of harmlessness or lack of prejudice. The Supreme Court in United States v. Lane did identify certain criteria in the case of circumstance of misjoinder, certain criteria that courts are to consider as to whether or not there was actually any prejudice that occurred. The Supreme Court made clear that there needs to be actual prejudice in order for the misjoinder to be harmful. Two key factors that the Supreme Court identified were the strength of the evidence, whether it was overwhelming against the defendant, as well as any mitigating steps that the court took to ameliorate the improperly joined counts. Here in this case, as the Court is aware, the jury acquitted Michael Young of counts one through three, all of which dealt with drug dealing. Mr. Duncan is correct in terms of his characterization of the government's theory, both in charging and at trial, is that Mr. Young was involved in the distribution of drugs, and that he was also involved, also carried firearms to further his drug-trafficking activity. By virtue of the jury's verdict, it seems as though the jury acquitted him of that. So we look to any prejudice that may have resulted by virtue of the guilty convictions on counts four through six. It's the government's submission that, for those counts, the evidence was overwhelming in support of the jury's verdict. As it pertains to count four, that deals with the April 2, 2014, traffic stop. In addition to the DNA evidence, which I'll touch on in just a little bit, we had the testimony of Officer Owens, who was one of the officers who was arriving at the traffic stop. He's the one that actually took Mr. Young out of the vehicle. Mr. Young was sitting in the passenger side of the vehicle. Deputy Owens' testimony to the jury was that, upon opening the door, he immediately saw, in plain view, in the little compartment on the door, right next to Mr. Young, the firearm. Pulled Mr. Young out of the vehicle. Mr. Young was then arrested. The firearm was taken into custody, subjected to DNA analysis. The DNA analyst testified at trial, said that there was DNA recovered from the firearm, as well as the magazine of the firearm, that Mr. Young was a contributor to the DNA, both on the firearm, as well as the magazine. As it pertains to the firearm, the DNA analyst was able to exclude 94.9 percent of the African-American population worldwide. That was the weakest of the three, in terms of statistical analysis, that the DNA analysis revealed. But, as it pertains to the magazine of that firearm, it was a 99.9 percent match. Or, excuse me, the DNA analyst was able to exclude 99.9 percent of the African-American community. So, a much stronger match, as it pertains to the magazine. That's as it pertains to Count 4. Count 5, the government would submit. The evidence was also overwhelming as to that count. That was the November 3, 2014, traffic stop, where the officer who was searching the vehicle. Once again, this is a case where Mr. Young was a passenger in the vehicle during the course of the search. A fire... Can you touch a weapon without knowing to possess it? Your Honor, I suspect there could be an isolated circumstance where you brush by a firearm on a singular incidence, and your DNA could be on it. However, I would submit, in this case, certainly as it pertains to Count 4, the DNA wasn't simply on the firearm. It was actually on the magazine, as well. It could be both. It could be both. Can't you touch something without possessing it, for legal purposes? I think it would be very difficult for... For example, if I hand you a bag right now, and I said, look in here, counsel, and you reach in the bag, and you put your hand on the gun, is that possessive? For that purpose, you just... And you say, oh my goodness, it's a gun. Have you possessed it from a legal standpoint? In this circumstance, there were... I don't know this circumstance. All we know, I'm giving you the benefit of the doubt, and that is that DNA said he touched it. That's the evidence. What date, counsel said, wasn't this charge a specific date he did something? That's correct, Your Honor. Okay. So what we know is that at some point, he touched it, correct? Correct. All right. So again, my question is, you can't touch it without possessing it. You agree with that, don't you? There are circumstances. However, I would... Do we know what circumstances that he touched it here? You said there are some. Why is not this one? I don't think you can ignore, and I don't think the jury ignored the fact that it's not simply solely the DNA evidence. There was a search of the car. It's also the fact that the firearm was found directly next to Mr. Young as they were pulling him out of the vehicle. It's the same in Counts 4 and in Counts 5. The April 2nd, 2014, as well as the November 3rd, 2014 circumstances. In both circumstances, Mr. Young was a passenger in the vehicle. There was a firearm found immediately next to where Mr. Young was sitting. In both circumstances, there was DNA found on the firearms, DNA where Mr. Young was determined to be a contributor. As I indicated, it was 94.9% on the firearm in the April circumstance. In the November circumstance, the DNA excluded 99% of the African-American community. Well taken evidence. But let me ask, going back to the jury's verdict helps you. I'm not sure that helped you in terms of it clearly shows there was no prejudice. I mean, I did a lot of defense work in private practice for a long time, for 20 years of it. But it, you know, having weak, there must have been weak drug cases because he was acquitted of it. And people don't normally, you know, the rate of conviction in federal court is pretty high. So that's the whole point. Putting weak drug cases with firearm cases, they're acquitted on the, for example, the weak ones, for example. But even this court says in many cases, what? Guns automatically follow drugs, right? And jurors think that too, don't they? I know you represent the government, but you can go ahead and common sense, right? Yes, Your Honor. Most jurors associate drug dealers have guns. So you have weak drug counts. You throw that up there. Oh, you lose on that one. Yeah, but the bleed is on the other side. That's how, I don't think it disproves prejudice at all. I think it matches it. Because you have these weak drug cases. That's why you want to join everything. Join this as, oh, throw enough on the wall, something is going to slide. But when you look on the wall, there's still going to be some remnants. And jurors, the remnants is where I want the conviction, right? Why is this case not showing prejudice? Judge Gregory, that is certainly a fair point. And I disagree with the characterization that the drug counts were weak. In this case, there was testimony from Special Agent Adam- You lost, didn't you? We did, Your Honor. But I still- What's the rate of conviction normally? Got to be in the 90s. It is- Am I wrong about that? No, it is very high, Your Honor. Yeah, I'm telling you, it must have been pretty weak. But Judge Gregory, in this case, during the course of the prosecution, Mr. Young had entered into a proffer agreement with the government. He had breached that proffer agreement. During the course of the prosecution, he had actually admitted to being a drug dealer. He admitted to the crack cocaine, to possessing the crack cocaine, that formed the basis of count two. The government, I think, looking back on it in hindsight, took for granted some of those counts and spent a significant amount of time on the firearms count. We had demonstrative evidence, you know, pointing out the DNA because we felt too confident, I believe, on the drug count. So I think, if anything, the case on the drug count was fairly strong and we focused too much of our efforts on taking for granted the drug aspect. I do want to get to count six because I've already discussed count four and five. Count six, that was the two firearms that were found underneath the passenger side of the Escalade, of which Mr. Young was a driver. Only one of those vehicles was actually, or excuse me, only one of those firearms was charged. Is that pursuant to an inventory search? Yes, Your Honor. This inventory search, where is the evidence that it was done in accordance with some type of standardized criteria as law requires? Is that the testimony from Officer McGregor? Correct, Your Honor. The only testimony that was elicited during the course of the suppression hearing regarding the search that took place on January 30, 2015, was the testimony of Deputy McGregory, who testified that the purpose for which she was asked on direct examination, the purpose for which she conducted a search of the vehicle, she indicated that the exclusive purpose for which conducting the search was because she wanted to protect the department and the agency of any future claims of theft or destruction of property. Did she state at any point that it was done in accordance with the official policy of the department? There was no explicit statement, and I'm not aware of any magic words that must be spoken. I think the District Court fully took into context the fact that Deputy McGregor did make efforts to reach out to the owner of the vehicle, actually sent an officer. The search must indicate at some point that it is conducted in accordance with a standardized policy, or establish it through the evidence. Something must show it's done. You don't just do an inventory search of a vehicle. Judge Wayne, this Court certainly has recognized the rationale of conducting an inventory search of the vehicle as an exception to the search warrant requirement. This Court in the United States v. Banks indicated that a property inventory search is merely an incidental administrative step following the arrest of an individual to protect both the property of the person, as well as to protect the police from false accusations of theft. I think the rationale clearly supports the circumstance here. The District Court found... The circumstance here is whether we can extrapolate from this that the officers in the entire department, even those not present, would understand this to be the policy. Right. And to be fair, Judge Wayne, there was no explicit... I certainly can see there was no explicit written policy that was submitted to the District Court. This Court in the United States v. I don't know if it's Boulay or Bulette, said that no explicit written requirement is required. We said all you have to do is make sure the officer testifies on the stand. There is, of course, a standard policy. It might be informal. It might be formal. And I just... Sort of agreeing with you, the bar is very low, but it just seems like someone messed up and didn't check the box in this case. Judge Harris, the only response I had to that... There was no testimony regarding standard policy, policy of the department. There was no written policy that was submitted. I think, though, if the Court does consider the rationale of the inventory... I don't know, but that's a whole separate question. No one... The District Court specifically found this was a good faith... Correct. ...agreed. But that's not the whole test. Correct. It has to be good faith and... I have one or two other questions about this one. What about the decision to impound the vehicle, to tow it in the first place? There's supposed to be a policy on that, too. And that didn't come up at all, right? There's nothing about that. Why'd they have to tow this thing? It's in a hotel parking lot. It's not obstructing traffic. It's not a... So I thought in Burt's time the Supreme Court said that there needs to be a standard criteria for when you're going to do the towing. And for whatever it's worth, I know Richland County does have a standard policy for impounding. However, it was not introduced during the course of the hearing. It was not an issue that was raised below, I believe, it was the officer's belief that because they were unable to locate the actual owner, Deputy McGregor didn't feel comfortable leaving it in a hotel parking lot all by itself. And so an inventory search was done. And there's certainly no evidence, as you alluded to, and as the district court found, that this was a sort of carte blanche search for incriminating evidence. The only testimony elicited below was the fact that she was doing it to protect the law enforcement agency. And I think there's going to at least be an inference that there's a policy for that. The one point I did want to touch on with respect to count six and the overwhelming... Before we leave January 30th, I had one other question. It's really just a point of clarification. I'm trying to figure out why the stop got made in the first place. And at the suppression hearing, and in your brief, it's just that there was like an anonymous tip that a white car was driving through a neighborhood. And I know that can't be right. A suspicious vehicle call from a concerned citizen. So that's anonymous? You're right, Judge Harris. There was a white and colored Cadillac Escalade riding around three times? That's right. Deputy McGregor was traveling. There was a Bolo report issued for a white Cadillac over the radio. Deputy McGregor was driving in the opposite direction as the white Cadillac saw it pass by her in the same area. I don't get it. Why is it being stopped? Because it drove around the neighborhood three times and an anonymous phone call came in. And I dispute with the notion that it was actually... That the traffic stop actually occurred. She said that she turned around. She saw the last three either digits or letters of the license plate match that of the Bolo report. She turned around. The vehicle had already stopped in the parking lot of the hotel. You're saying there was no stop? No, there was no traffic stop on the January 30, 2015 circumstance. And I think the appellant concedes as much in his opening brief when he notes that the passenger actually got out of the vehicle, went into the hotel, and that Mr. Young could have done the same exact thing. Okay, so there was no stop. Correct. Okay, gotcha. And that's why there's no stop that's being challenged on January 30. It was just the search that was being challenged on January 30, 2012. So I'm glad you brought that point to my attention. And the last thing I wanted to note on that same firearm that was seized, the firearm that did not have the DNA of Mr. Young was not charged in the indictment. It was only the firearm that had the exact match, the DNA of Mr. Young. And furthermore, in addition to the DNA on that firearm, there was also a jailhouse telephone call that was played during the course of cross-examination of Amelia Cunningham, who at that time was the wife of Mr. Young, where there was a jailhouse conversation between the two of them. Mr. Young is referencing the two firearms that were inside the vehicle, saying that alluding to the fact that he thought that the passenger was going to take his firearm and leave the passenger's firearm in the vehicle. So that was played to the jury as further evidence that, in addition to the DNA evidence, we also had Mr. Young's own statement to Ms. Cunningham on the jailhouse call showing the possession of the firearm. So you started us out on the prejudice prong of this joinder inquiry. So are you basically conceding that there was a mis-joinder and arguing that it wasn't prejudicial? Judge Harris, the government is... Basically, are you conceding that there was a mis-joinder? Thank you for the opportunity to clarify that the government is not conceding mis-joinder. I do think this is a, given the acquittal of counts one through three, I think that bolsters the harmlessness argument that even if there were mis-joinder of this court were to determine a mis-joinder of the counts that pursuant to the criteria that was set forth in the Supreme Court's decision of United States v. Lane, the overwhelming evidence and support, the mitigating instruction, which I would note, I know this court and Hawkins as well as in Bout, both were circumstances where district courts, where this court did find mis-joinder, the district court did give a limiting instruction. I would note that Lane did follow this court's decision in Bout, but this court nevertheless found prejudice. I think the difference here is the acquittal. Judge Seymour gave the limiting instructions, advising the jury and instructing the jury that they would consider each count on their own merits, and all of the evidence in this case shows that that's what they did. They compartmentalized the evidence. They were able to do that. They said the government did not prove its case on the drug counts, counts one, two, and three, all of which were in support of the government's theory that Mr. Young was a drug dealer. The jury did not buy that argument. So here, and that's an important distinction between this case and I think the Hawkins, as well as the strength of the evidence in both Bouts and Hawkins, I think the case rose and fell on one witness. There were inconsistent testimony. The witnesses were cross-examined pretty heavily and issued inconsistent statements. Here, the strength of the evidence and the fact that every indication shows that the jury was able to fully abide by Judge Seymour's instruction, compartmentalize the evidence, and reach a verdict based upon the evidence, even if there were a misjoinder of the count. Isn't there a third factor about whether evidence would have been admissible? There is. Right, the cross-admissibility of the evidence. I'm sorry? I'm sorry, you're not relying on that one. Well, I think in this case, the first two prongs are extraordinarily strong in terms of the mitigating instruction that Judge Seymour advanced or gave to the jury, coupled with the overwhelming evidence. I think those two prongs alone can allow this court to make a finding of harmlessness. I disagree. Can you at least address the third prong? I mean, are you acknowledging that the evidence of the drug charges would not have been admissible? There was no cross-admissibility here. Evidence of the drug charges could not have come in at the felon in possession trial. Well, I mean, I think certainly, you know, if we take into account the fact that drug dealers, it's well accepted that drugs are tools of the trade, that firearms are tools of the trade for supply a motive for an individual to possess a firearm is that they're a drug dealer, that I think it could be Rule 404B evidence, and therefore there would be cross-admissibility there. So I'm not conceding that the third prong, I think all three prongs actually would be satisfied in this case. Yeah, that's what stood out to me. He didn't charge him with being a drug dealer. He wasn't charged with being a drug dealer, was he? No, Your Honor. He was charged with two counts of possessing with the intent to distribute crack cocaine, and then the one additional, I'd say, drug-related count is possession of a firearm in furtherance of drug trafficking activity, all of which he was acquitted of. So my point is that they could have believed he was a drug dealer and still acquitted him of what he was charged with. That's what they did as it pertains to counts one through three. We don't know that. I've said he could have believed that he was a drug dealer. We don't know what they believed. Oh, you're right. They could have believed he was a drug dealer, but yet acquitted him of the charge, correct? Right, there's no way to know. But the association with guns is drug dealing. You don't understand my point. That's the prejudice that drug dealers and guns, whether you specifically did this on a different day, for example, you could walk around. I mean, I don't know why people are bereft of common sense with these cases. You can walk around in neighborhoods, unfortunately, in many places and say, you know, I think those people are drug dealers, and see no transaction at all. Once you're convinced of that, it's no, and you parade that person associated with guns. But as to whether they did it that day, no, you didn't convict them of it. That's the association. That's the whole, that is the gravamen of the misjoinder, because you're joining concepts of drug dealing and guns, and in the middle is what you're specifically charged them with. That's the key. They say, well, it's pretty weak. And it's pretty weak as to the individual charge. But the connotation of the case is clearly drugs. But the denotation is not guilty as to this date and this charge. And I mean, our country is full of that. They label people. I mean, for example, this stop, you said, and the inventory stop. What was it you said? He was going around in the neighborhood. But what brought the attention was he was a black person. Was he in the wrong neighborhood or what? Because you brought black in, because you said African-Americans were, that's the only reason why I mentioned it, because you said, was he in the wrong neighborhood? No, Your Honor. And this didn't come out of trial, but it was actually, I believe, a relative that was concerned about his safety that made the telephone call. The only time I've referenced, I believe, African-American was in connection with the DNA evidence. And that was the testimony of the DNA examiner. To be clear, there was actually no traffic stop that was done. But I said, what brought his attention? What brought him to their attention? It was the BOLO, the be on the lookout tip from the anonymous tipter saying that a white Cadillac had driven around the house three times. That's all the officer knew. The officer turned around, did a consensual police encounter at that stage. And what was being challenged is the inventory search of the vehicle when the officer made the interaction with Mr. Young and the determination that he had a pending charge for driving under suspension. I do understand and appreciate, Judge Gregory, the point that you're making regarding the concern about, even though he's acquitted of the counts for being a drug dealer that could still have an impact, and I see I'm well past my time, on the firearm counts. I would draw the Court's attention to the Supreme Court's decision in Lane, the Supreme Court's discussion regarding the mitigating steps that a district court can take to ameliorate what the Supreme Court referred to as spillover evidence regarding the misjoined counts as it pertains to the counts that he was convicted of. The Supreme Court said, when the trial court is aware of potential for prejudice, the risk for transference of guilt over the order of admissibility may be reduced to a minimum by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently. Judge Seymour, during the course of the motion of severance hearing, did explicitly recognize the concern, gave the jury instruction. All signs indicate that the jury was able to compartmentalize the evidence, render a acquit him of the drug-related charges, convict him of the drug charges based off the officer's testimony as well as the DNA evidence. I see that my time has expired. For those reasons and the reasons set forth in our brief, we'd ask that you affirm the judgment of the district court. Thank you, counsel. Thank you. Mr. Duncan, you have some time reserved. Thank you. Your honors have addressed many of the points of my position in this case on behalf of Mr. Young is sort of the throw it at the wall and we'll get something out of this. And it's human nature and I, you know, I listened to Mr. Garner here this morning say, well, we made this stop and counts four and five, the weapon, the firearm that was found was near Mr. Young in a vehicle in which he was a passenger. Despite the fact that in one of the, in count five specifically, count five, the driver of the vehicle who, albeit was his girlfriend, now his wife, but she claimed it. She said, it's my gun. It's between us in the console of a vehicle. It doesn't belong to either one of us. It belongs to another individual. It's a vehicle we drive, but it belongs to somebody else. It's mine. Right. And despite that, the officer says, I don't believe you, or maybe I believe you, but I'll tell you what, I'll just lock you both up and then we'll figure it out later. You know, that's what courts are for. I don't need to figure it out right here at the scene. But in the final count, in the final stop in the hotel parking lot in January of 2015 over in Blythewood, South Carolina, again, at the hotel, and I appreciate that Mr. Garner says, and I do state in my brief, it's not a traffic stop. I don't know what kind of stop it is. An encounter with the police is what it is. The officer comes up and watches two individuals. One, my client, gets out of the passenger's, excuse me, the driver's side. My client gets out of the driver's side. Other individual gets out of the passenger's side, leaves, and, you know, my client gets arrested for driving under suspension after they run his tag and, you know, find out who he is and say, oh, you're driving with a suspended license. We're taking you in. And then at some point later, and it's not clear to me at all, and I was there at trial, so I don't, I'm sure it can't be clear to anybody on this panel, when the decision was made, oh, we got to tow this vehicle, we got to do, and so we'll have to do something, do some sort of inventory search because that's what we do, again, I don't think that's in the record at all. The only thing I recall in Deputy McGregor's testimony is that they tried to get in touch with the owner of the vehicle and that person, they couldn't get them immediately. They couldn't get them that night in that particular moment in time, so they must have to tow the vehicle. But point being, finally, when the inventory search was done and Mr. Young has already been hauled off to the county jail, of course, and nobody knows anything about where Mr., anything having to do with what was in the vehicle, except that the firearms, the two firearms are found on the passenger side of the vehicle under the seat where the guy happened to walk away, leave the scene, leaving Mr. Young standing beside the vehicle, which he was the driver and had some, he wasn't going to walk away. I don't mean to suggest that he was going to flee his vehicle or the vehicle. But I just, I don't think the government can have it both ways. They can't say, well, if the gun is in close proximity to the guy that we think is guilty because he's a drug dealer, you know, then what's good for the goose is good for the gander. It's, you can't, you can't pick and choose the location, location, location, and then say, well, I don't like it this time. I'm going to, it's Mr. Young. It's got to be Mr. Young. Can I ask you a question about the count six, January 30th stop, not stop, January 30th encountering search, more important. If hypothetically, I'm just assuming for the sake of argument for a moment, we thought there were a problem with the warrantless search of the car. It would follow from that, that the conviction on count six would be reversed, right? Yes. Okay. And is that going to make a difference? It's, as I understand it, your client is serving concurrent sentences on all three counts of felon in possession. So what would we do? We would vacate the conviction and remand for resentencing? See if it makes a difference? I think it could. I think it could. These aren't statutory minimum sentences, right? That is correct. That is correct. So I think that the district judge Seymour could on remand go down on the sentence if the court left it with two convictions instead of three. Okay. Again, I simply would say in closing that I challenge this weight of the evidence. Overwhelming is the word the government has used in their brief. If you break it down to each encounter, each stop, traffic stop, two of those, one other encounter that resulted in a conviction, I don't think you're left with this overwhelming sense of, oh, this guy's guilty. I think you're left with, well, maybe, maybe, maybe not. And maybe, maybe not. In Mr. Young's instance, resulted in acquittal on some counts already that were tried. And we'd certainly like the opportunity to have a chance of trying the case without those counts being in the mix. Thank you. Any questions? Thank you. Mr. Dunn, anything further? Thank you, Counselor. Note that you're a court opponent. I just want to say on behalf of the Fourth Circuit, we thank you so much. We couldn't do our work without lawyers like yourself taking on these cases, and we appreciate it very much. Mr. Garner, we also appreciate your able representation of the United States. Thank you.
judges: Roger L. Gregory, James A. Wynn Jr., Pamela A. Harris